UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

BRIANNA DONAHUE

vs.

CITY OF PHILADELPHIA
DEPARTMENT OF HUMAN SERVICES
1515 Arch Street
Philadelphia, PA 19102

TURNING POINTS FOR CHILDREN
415 S. 15th Street
Philadelphia, PA 19146

CIVIL ACTION
COMPLAINT WITH JURY DEMAND

Plaintiffs, Brianna Donahue, by and through her attorneys, Edelstein Law, LLP, hereby brings this action against Defendants and avers:

NATURE OF THE ACTION

1. Plaintiff files this Complaint having recently reached the age of majority and having finally escaped from the jurisdiction of the dependency and foster care system implemented by the employees of the City of Philadelphia, Department of Human Services (hereafter "DHS"). She files this Complaint to remedy various Federal and State civil rights violations and tortious conduct committed by Turning Points for Children (hereafter "Turning Points"), a Pennsylvania non-profit corporation, who placed the Plaintiff in a foster home where she was repeatedly physically and emotionally abused.

2. Plaintiff was physically and emotionally abused in a home while in foster placement. Other children who were encouraged by the foster parent to physically abuse and

torture the Plaintiff. Plaintiff was placed and remained in the home with the approval of DHS and Turning Points. Defendants failed to adequately monitor Plaintiff's safety and well-being, and provide for her basic needs. Plaintiff was starved and abused by the foster parent and has suffered physical, emotional and psychological injuries as a result of the abuse she suffered.

## PARTIES

3. Brianna Donahue, Plaintiff, is a young adult now 19 years of age, who resides at 1512 Harrison Street, Philadelphia, Pennsylvania 19124. She reached the age of majority on June 2, 2020.

4. Defendant City of Philadelphia is a municipality in the Commonwealth of Pennsylvania that was at all times relevant hereto, a licensed agency which is mandated to provide and promote the safety, permanency and well-being for children and youth at risk of abuse, neglect and delinquency. Its principal place of business is located at 1515 Arch Street, Philadelphia, Pennsylvania 19102.

5. Defendant DHS is responsible to investigate reports of suspected child abuse and Neglect, provide necessary services to children and families to protect children who are the subject of such abuse and neglect, including placing children into out-of-home custody, provide proper care to children in state custody from further maltreatment, and monitor the care of the children in its charge at the foster homes in which DHS places children.

6. Defendant Turning Points is a Pennsylvania corporation and licensed child placing agency with a principal place of business located at 415 S. 15th Street in Philadelphia, Pennsylvania.

7. Defendant Turning Points provides foster care and adoption services for children and families. Turning Points' services include supervision of children in the custody of DHS and

in the physical care of Turning Points approved foster families as a Community Umbrella Agency and was responsible for monitoring the safety of children in its foster care placements.

8. Defendant Turning Points was also mandated to recruit, train, investigate and approve potential foster parents during the relevant periods herein.

9. At all times relevant hereto Defendants City of Philadelphia and Turning Points for children were acting by and through its employees and/or agents.

10. Noellia Torres is an adult individual and a caseworker, employee, and/or supervisor, and/or manager of Defendant Turning Points who was assigned to the care of Brianna Donahue during all relevant times.

## JURISDICTION AND VENUE

11. Jurisdiction in this Court is asserted under the provisions of 28 U.S.C. §§ 1331 and 1343. This Court has Supplemental Jurisdiction of Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

12. Venue is appropriately laid in this Court pursuant to 28 U.S.C. 1391(b) in that the actions complained of occurred within the District, the Defendants have carried on business within the District, and both Defendants are located within the District.

## FACTS

13. On or about September 18 2017, DHS placed Plaintiff with family members after a determination of dependency by Judge Lyris Younge. DHS sought to remove Plaintiff from her family and attempted to destroy the family bond between Plaintiff and her siblings and mother.

14. At the time of the placement, Plaintiff was 15 years old and objected to being separated from her mother and sister. Regardless of her preference, Judge Younge removed her

from her mother's care and placed her in kinship care. Judge Younge's Order resulted in the separation of Plaintiff from her mother and siblings.

15. Plaintiff was removed from a kinship placement and placed with another family member. DHS removed her from the care of this family member, as it failed to investigate that individual's background and abruptly discovered information related to a criminal conviction that rendered the family member unable to act as a kinship resource.

16. Plaintiff was then moved to another kinship placement where she remained until 2018.

17. In 2018, Plaintiff was placed with a foster parent, who is unnamed as neither Defendant City of Philadelphia nor Turning Points have definitively identified this parent sufficient to include the parent in this suit. Plaintiff is unsure of the exact name of the parent. The placement was in Philadelphia through Turning Points for Children, which acted as the Community Umbrella Agency (CUA) in the supervision of Plaintiff's dependency case still active at that time with the Philadelphia Court of Common Pleas and Judge Lyris Younge.

18. At the foster care home, Plaintiff was abused physically, verbally, and emotionally by the foster parent and other children in the house.

19. Plaintiff was starved by the foster parent and kept from eating on a daily basis.

20. Plaintiff was verbally and physically abused by the other children in the home of the foster parent, including being kicked, punched, thrown to the ground, spat on, beaten with objects, taunted, jeered, teased, and mocked. At times, the taunting and mocking related to her race, which was different than the foster parent and the other children in the home.

21. Plaintiff suffered bruising and scrapes to her body along with emotional and psychological injuries related to the physical abuse she suffered.

22. Plaintiff reported the abuse to Noellia Torres, the CUA Social Worker and employee of Defendant Turning Point for Children foster care family that DHS and Turning Points approved.

23. After these reports by Plaintiff to Noellia Torres and DHS, Noellia Torres informed the foster parent that Plaintiff reported abuse to Ms. Torres. Subsequent to Ms. Torres informing the foster parent, the physical and emotional abuse increased.

24. After being told of Plaintiff's reports, the foster parent withheld food from Plaintiff, causing her to starve and sometimes go without eating food for a day.

25. The foster parent placed locking devices on cabinets in her home to prevent Plaintiff from having enough food to eat.

26. Plaintiff went to bed on a daily basis without enough to eat despite foster parent receiving funds through her participation in the foster care program monitored and administered by Turning Points. Funds allocated specifically to feed and care for Plaintiff were not used for those purposes and Turning Points and DHS failed to ensure that these basic needs were being met by the foster care parent.

27. Defendants DHS and Turning Point kept Plaintiff in the care of the abusive foster parent for over two months prior to Plaintiff running away from the from the home.

28. As a direct result of the acts and failure to supervise the foster parent by Defendant DHS and Turning Points, Plaintiff suffered severe mental and psychological pain and anguish, post-traumatic stress disorder, severe and extreme hunger, loneliness, isolation, embarrassment, loss of life's pleasures, anxiety, stress, and other psychological impacts that have been and may be diagnosed in the future by medical and psychological professionals.

29. Plaintiff was moved from the foster parent home to Carson Valley Group Home where she revealed the abuse to personnel of the

30. Defendants Turning Points and DHS did no investigation into the abuse suffered by Plaintiff at the foster home. Neither interviewed Plaintiff regarding her reports and upon information and belief permitted the foster parent to continue as a resource after Plaintiff's abuse.

## COUNT I
## VIOLATION OF 42 U.S.C. 4 1983 SPECIAL RELATIONSHIP AND STATE CREATED DANGERDEFENDANTS CITY OF PHILADELPHIA DEPARTMENT OF HUMAN SERVICES

31. Plaintiff incorporates all prior paragraphs by reference.

32 Plaintiff had a special relationship with Defendants as Plaintiff were in foster care and in state custody with DHS. At all times when Defendants City of Philadelphia, had Plaintiffs in their custody, Defendants had a special relationship with Plaintiffs which imposed upon Defendants an affirmative duty to care for and protect Plaintiffs from harm under the Fourteenth Amendment to the United States Constitution.

33. At all times when Defendants had Plaintiffs in their custody, the Plaintiffs' individual liberties were restrained such that they were rendered unable to care for themselves.

34. At all times when Defendants had Plaintiffs, in their custody, Defendants had a constitutional duty to provide for Plaintiffs' basic humans needs, such as reasonable safety, food, drink and sustenance.

35. Defendants breached that duty by intentionally failing to properly screen and monitor the foster home in which Plaintiff was abused and starved. Defendants' decisions,

actions and omissions amounted to deliberate indifference to Plaintiffs' danger and welfare as to shock the conscience of society.

36. The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the substantive due process right to be free from state-created dangers.

37. Defendants violated Plaintiffs' substantive due process rights through continually failing to adequately train and supervise its employees and agents; failing to track and understand information relevant to the screening and approval of the foster home in which Plaintiff was abused; failing to adequately supervise its employees and agents responsible for screening and approving the foster home; failing to screen and approve the foster home; failing to adequately train and supervise its employees and agents to screen and monitor the foster parent as suitable foster parents; consciously failing to act on the reports of abuse that Plaintiff made; failing to monitor the activity of the CUA agency Turning Points and the policies and procedures in place to deal with the reports by Plaintiff to Turning Points staff regarding abuse.

38. The abuse suffered by Plaintiff was foreseeable because at least one complaint about the foster care of Plaintiff was brought to the attention of DHS and Turning Points.

39. The harm ultimately caused to Plaintiffs was foreseeable because TURNING POINTS and DHS failing to adequately train and supervise its employees and agents; failing to track and understand information relevant to the screening and approval of the foster home in which Plaintiff was abused; failing to adequately supervise its employees and agents responsible for screening and approving the foster home; failing to screen and approve the foster home; failing to adequately train and supervise its employees and agents to screen and monitor the foster parent as suitable foster parents; consciously failing to act on the reports of abuse that Plaintiff made; failing to monitor the activity of the CUA agency Turning Points and the policies

and procedures in place to deal with the reports by Plaintiff to Turning Points staff regarding abuse.

40. Plaintiff was denied the opportunity to have her complaints of abuse investigated, and DHS and Turning Points encouraged or acquiesced to the foster parent's increased level of abuse after they informed the foster parent of Plaintiff's report. This resulted in an escalation of abuse and starvation.

41. Defendants had authority over Plaintiffs' placement as they were the Plaintiffs' legal custodians.

42. Defendants also had authority to speak with Plaintiff privately in order to monitor Plaintiffs' care and well-being. Defendants also had authority to investigate abuse reports and remove the Plaintiff from an abusive situation without exacerbating that abuse and starvation.

43. In failing to speak with Plaintiff and address her reports of abuse and starvation privately without alerting the foster parent, Defendants created the opportunity and allowed for the foster parents further abuse and starvation of the Plaintiff.

44. Due to Defendants' willful disregard for Plaintiff's safety, Plaintiff's risk of injury was greatly increased and Defendants placed Plaintiff in a worse position.

45. Defendants failed to ensure the safety and well-being of Plaintiff while she was in foster care and in custody, proximately causing her substantial and unnecessary physical, emotional, developmental, psychological and/or psychiatric harm.

46. Plaintiff was injured as stated above directly by the above acts and omissions all of which are in violation of 42 U.S.C. 4 1983.

WHEREFORE, Plaintiffs demand that judgment be awarded in their favor and against Defendants.

## COUNT II - NEGLIGENCE
## DEFENDANT TURNING POINTS FOR CHILDREN

47. Plaintiff incorporates all paragraphs as if fully set forth herein.

48. At all times material, Turning Points acted by and through its agents and employees, including Noellia Torres, as the CUA foster care agency responsible with DHS for the oversight of Plaintiff's placement and care with the foster parent who abused and starved Plaintiff.

49. Defendant Turning Points had a duty to Plaintiffs, as a child welfare agency and as foster care social workers, to care for their well-being and protect them from harm. Specifically, Defendants owed a duty to Plaintiffs to provide a foster home free of physical and psychological abuse; with adequate, safe, and appropriate food, clothing, and housing; regular contact with case workers; and with services of high quality designed to maintain and advance Plaintiffs mental and physical well-being and environments free from unwarranted physical restraint, torture by hunger, and isolation.

50. Defendant Turning Point owed a duty to Plaintiff to adequately screen, train, approve, and monitor Plaintiff's foster family and homes both prior to and during placement, including but not limited to: the right to a detailed home study prior to Plaintiffs' placements; to ensure that the foster care were providing the necessities of life to Plaintiff; to inspect the foster parent's income to determine economic independence; to ensure that the foster parent was properly trained to fulfill her obligation as a foster parent; to interview each household member not participating in preservice training, and to verify information about each household member;

to obtain medical references for each member of the foster parent household; to support the foster parent in fulfilling her role with respect to Plaintiff's case goals and to conduct inspections of the foster homes, which includes private and individual interviews with all foster children and others in the care of the foster parent.

51. Defendant Turning Point owed a duty to Plaintiff to promptly and thoroughly investigate any complaints or reports questioning the foster parent's compliance with applicable statutes and/or regulations.

52. Defendant Turning Points had a duty to train their employees to ensure that any suspected abuse and/or neglect of Plaintiffs be recognized, reported and investigated as legally required.

53. Defendant Turning Points owed a duty to Plaintiff to adequately screen and approve the foster care home as an appropriate adoptive home and ensure post-adoption safety and welfare.

54. Defendant Turning Point's duty to perform a detailed assessment prior to recommending a foster placement includes, but is not limited to: ensuring that the foster parent took the classes required to be a foster parent; a visit to the foster home; a review of their personal references, the procurement of various specific categories; of information and a completion of background checks regarding criminal records and/or records of prior child abuse or neglect.

55. Defendants breached their duties: to adequately screen and approve the foster home as an appropriate adoptive home; to ensure post-adoption safety and welfare; to select Plaintiffs' adoptive home based on an informed, objective judgment, after a full and careful assessment of each factor which could have affected Plaintiffs' ability to benefit physically,

socially, and emotionally.

56. Defendant Turning Points actions and omissions were a substantial departure from the exercise of reasonable professional judgment, practice, and standards.

57. Defendant Turning Point failed to provide a home free from physical and psychological abuse.

58. Defendant Turning Points negligence consisted of the following:

a) Failure to screen the foster care home for adequate space, food, sustenance, and environmental factors that would allow Plaintiff to have her personal needs met;

b) Placing Plaintiff in a foster home where she was met with animosity and disparate treatment due to her race;

c) Failing to screen the home for appropriate number of children such that the foster care parent could possibly provide reasonable care;

d) Failing to screen the home for behavioral issues in the natural children and the other foster child in the home;

e) Failing to ascertain a proper screen of the home living arrangements

f) Failing to properly inspect the home during Plaintiff's

g) Failing to act on Plaintiff's complaints of starvation and abuse directly to Defendant's employee Noellia Torres;

h) Alerting the foster parent to Plaintiff's complaints such that the foster care parent increased the abuse and starvation that Plaintiff suffered;

i) Failing to remove Plaintiff from the foster home immediately after Plaintiff reported the abuse so that Plaintiff suffered more and worse abuse;

j) Failing to provide a thorough investigation of claims made against the foster parent;

59. By their acts and omissions, Defendant Turning Points violated the duty of care owed to Plaintiffs and were a proximate cause permanent injuries to the Plaintiff, including substantial physical, emotional, developmental, psychological, and psychiatric harm.

60. Defendant Turning Point's acts and omissions were a material element and/or a substantial factor in bringing the harm about to Plaintiffs.

61. The harm sustained by Plaintiffs was a reasonably foreseeable result of Defendants' acts and omissions.

62. As a direct result of the acts and failure to supervise the foster parent by Defendant DHS and Turning Points, Plaintiff suffered severe mental and psychological pain and anguish, post-traumatic stress disorder, severe and extreme hunger, loneliness, isolation, embarrassment, loss of life's pleasures, anxiety, stress, and other psychological impacts that have been and may be diagnosed in the future by medical and psychological professionals.

WHEREFORE, Plaintiffs demand that judgment be awarded in their favor and against Defendants.

**RELIEF**

WHEREFORE, Plaintiffs demands that judgment be awarded in her favor and against Defendants as follows:

1. An Order awarding compensatory damages in an amount to be determined at trial;

2. An Order awarding punitive damages in an amount to be determined at trial;

3. An Order awarding reasonable attorney's fees;

4. An Order awarding prejudgment interest; and

5. An Order directing such other and further relief as the Court may deem just and proper, including but not limited to appropriate costs and disbursements.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues.

Respectfully submitted,

EDELSTEIN LAW, LLP

Jay L. Edelstein, Esquire
Attorney I.D. 30227
A.J. Thosmon, Esquire
Attorney I.D. 87844
230 S. Broad Street, Suite 900
Philadelphia, PA 19102
215-893-9311
jedelstein@edelsteinlaw.com
athomson@edelsteinlaw.com
Attorneys for Plaintiffs

DATE: 7/30/21

## VERIFICATION

Plaintiff, Brianna Donahue, verifies that the statements made in this pleading are true and correct to the best of plaintiff's knowledge, information and belief. To the extent that the pleading contains averments of law and language of counsel and results of investigation, plaintiff has relied on counsel. Plaintiff understands that false statements herein are made subject to penalties of 18 Pa. §4904, relating to unsworn falsification to authorities.

_____
BRIANNA DONAHUE

DATE: 7/30/2021

EDELSTEIN LAW, LLP